## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

TONY MCCOY, FRANCIS WOOD,
CHRISTIAN DUTESCU, MICHELLE
PEDERSON, and MEGAN TOMSIK,
individually and on behalf of all
others similarly situated,

      **Plaintiffs,**

      **v.**

SAMSUNG ELECTRONICS AMERICA,
INC.,

      **Defendant.**

Civ. No. 21-19470 (KM) (JSA)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Named plaintiffs Tony McCoy, Francis Wood, Christian Dutescu, Michelle Pederson, and Megan Tomsik (together, "Plaintiffs"), on behalf of themselves and others similarly situated, filed this putative consumer class action against Defendant Samsung Electronics America, Inc., alleging that Samsung concealed a known material defect in two of its portable computer products, the Chromebook Plus 2-in-1 and the Chromebook Plus 2-in-1 V2. (Herein, "Chromebook" refers to either or both.)

Now before the Court is Samsung's motion to dismiss Plaintiffs' Second Amended Class Action Complaint. For the reasons expressed below, Samsung's motion to dismiss is **GRANTED in part and DENIED in part**.

## I.    BACKGROUND[1]

---

[1]    Certain citations to the record are abbreviated as follows:

        "DE" = Docket entry number in this case

        "SAC" = DE 24

        "Mot." = DE 27-1

### A. Factual Allegations

Plaintiffs allege that, between November 2018 and November 2019, they each bought a Chromebook from third-party retailer Best Buy (SAC ¶¶ 19, 28, 37, 46, 54.)[2] They also allege that, after varying periods of use, the display hinge on their device separated from the device screen, resulting in cracking or shattering of the screen (the purported "Defect"). (*Id.* ¶¶ 21, 30, 39, 48, 56, 59.) Plaintiffs acknowledge that their devices were covered by a one-year limited warranty (*Id.* ¶ 101; Opp. at 3),[3] and allege that the display hinges on their Chromebooks failed after that one-year warranty period had lapsed.[4]

Plaintiffs allege that in making their purchases, they relied on representations of "durability and functionality" which were contained in "marketing and sales materials present at the Best Buy retail location" or website, and on the Chromebooks' packaging. (SAC ¶¶ 20, 29, 38, 47, 55.) Plaintiffs also allege that "[t]he fact that Defendant advertised and warranted it as a premium and durable 2-in-1 laptop/tablet with high-end features was

---

"Opp." = DE 28

"Reply" = DE 29

[2]     For purposes of a motion to dismiss, all well-pleaded facts stated in the Second Amended Complaint are assumed to be true. *See* Section II, *infra.*

[3] Samsung attached the "Samsung Computer Limited Warranty" to its motion, (DE 27-3), and I consider it because it is integral to and explicitly relied upon in the SAC. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

[4]     McCoy bought a Chromebook from a Best Buy in or around December 2018 and the purported Defect allegedly manifested in or around August 2021. (SAC ¶¶ 19, 21.) Wood bought a Chromebook from a Best Buy in or around November 2019 and the purported Defect allegedly manifested in or around November 2021. (*Id.* ¶¶ 28, 30). Dutescu bought a Chromebook from a Best Buy in or around June 2019 and the purported Defect allegedly manifested in or around December 2021. (*Id.* ¶¶ 37, 39.) Pederson bought a Chromebook from a Best Buy on or around November 26, 2018 and the purported Defect allegedly manifested in or around January 2022. (*Id.* ¶¶ 46, 48.) Tomsik bought a Chromebook from Best Buy's website on July 24, 2019 and the purported Defect allegedly manifested in or around late May 2021. (*Id.* ¶¶ 54, 56.) Tomsik received a free-of-charge repair, and her Chromebook was returned to her by the end of August 2021. (*Id.* ¶ 58.) The purported Defect allegedly manifested again in or around late January 2022. (*Id.* ¶ 59.)

material to [Plaintiffs] and to other reasonable consumers." (*Id.*) They further allege that, after the hinges on their Chromebooks broke, they each spent a substantial amount of time researching the issue on the internet and, in doing so, discovered numerous publicly available negative reviews regarding the same purported Defect. (*Id.* ¶¶ 24, 33, 42, 50, 58, 60.)

According to Plaintiffs, the Chromebooks' hinges have a defect which prevents them "from being used as advertised." (*Id.* ¶ 78.) The purported Defect "causes one or more of the hinge arms to separate from its mount inside the display, which ultimately damages the display and cracks the screen and/or prevents owners from opening, closing, or adjusting the displays of the Class Device for fear of damaging the screen glass." (*Id.*) Plaintiffs continues that "the plastic mount in the display to which the hinge assembly is affixed fails and detaches from its attachment point within the display, thus causing the Defect." (*Id.* ¶ 80.) When the consumer "attempts to change the display angle by applying force to it, the detached hinge arm exerts pressure on the underside of the display glass." (*Id.*) Plaintiffs continue that "when the display is moved, the resistance of the hinge causes the screen and surrounding plastic to shatter, damaging the screen and rendering further use of the laptop very difficult (and dangerous)." (*Id.*)

Plaintiffs also allege that Samsung was aware, or should have been aware, of the Defect based on pre-release product testing, warranty repair inquiries, online posts and comments, and its affiliate's patent applications. (*Id.* ¶¶ 83–100.)[5]

In their Second Amended Complaint, Plaintiffs assert claims for: 1) violation of the Magnuson-Moss Warranty Act ("MMWA"); 2) breach of the implied warranty of merchantability; 3) violation of the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"); 4) violation of the Oklahoma Consumer Protection Act ("OCPA"); 5) violation of the Missouri Merchandising

---

[5]    I will address the substance of Plaintiffs' knowledge allegations in my analysis below.

Practices Act ("MMPA"); 6) violation of the Ohio Consumer Sales Practices Act ("OCSPA"); 7) unjust enrichment; 8) fraudulent omission or concealment; and 9) "declaratory and injunctive relief." Samsung now moves to dismiss the Second Amended Complaint.

### B. Procedural History

Plaintiff Tony McCoy initiated this action on November 1, 2021. (DE 1.) On February 4, 2022, Plaintiffs together filed the Amended Complaint. (DE 13.) On April 5, 2022, Samsung moved to dismiss the Amended Complaint. (DE 15.) On May 20, 2022, Plaintiffs opposed Samsung's motion to dismiss (DE 18), and separately filed a cross-motion to amend the Amended Complaint (DE 19). On June 20, 2022, Samsung filed a reply brief in support of its motion to dismiss and in opposition to Plaintiffs' motion to amend. (DE 20.) I granted leave to file the Second Amended Complaint, administratively terminated the prior motion to dismiss, and granted Samsung leave to refile or supplement the motion to dismiss in light of the Second Amended Complaint. (DE 22.) Plaintiffs filed the Second Amended Complaint (DE 24), and the current motion followed (DE 27). Plaintiffs filed their opposition on March 6, 2023 (DE 28), and Samsung filed a reply on March 27, 2023 (DE 29).

## II. STANDRARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[6] Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v.*

---

[6]     The pleading standard is heightened as to allegations of fraud pursuant to Fed. R. Civ. P. 9(b), as explained *infra*.

*Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept the facts in the Second Amended Complaint as true and draw reasonable inferences in Plaintiffs' favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc). On the contrary, I do not accept unsupported conclusions, unwarranted inferences, or legal conclusions as true. *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

## III.   DISCUSSION

In the following discussion, I address Samsung's arguments for dismissal as to each type of claim Plaintiffs assert: 1) MMWA, 2) implied warranty, 3) fraud and consumer protection statute claims, 4) unjust enrichment, and 5) declaratory and injunctive relief. I note that generally, "[a] plaintiff may bring state law claims only under the law of the state where he or she lived and the alleged injury occurred." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 332 (D.N.J. 2014). But to the extent no actual conflict exists, the court may default to New Jersey law to analyze the sufficiency of state-law claims. *See, e.g.*, *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 723 (D.N.J. 2011) ("Since no actual conflict exists, New Jersey law will be applied[.]"). In its motion, Samsung primarily relies on general principles that cut across different states' laws. Except as otherwise noted, Plaintiffs do not argue that any particular point of law differs state to state. As a result, I discuss Samsung's arguments for dismissal mostly in terms of New Jersey law or general principles, but analyze state-specific law as appropriate.

### A. MMWA

The MMWA is a federal statute that creates a federal cause of action for breach of warranty claims via incorporation of state law. *DeFrank v. Samsung Elecs. Am., Inc.*, No. 19-21401, 2020 WL 6269277, at *17 (D.N.J. Oct. 26, 2020) (citing 15 U.S.C. § 2310(d)(1)). Under the MMWA, a consumer may bring a claim "(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C. § 2310(d)(1). Paragraph 3 states

that "[n]o claim shall be cognizable" if, among other things, "the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C).

Plaintiffs assert that Samsung has violated the MMWA by "refus[ing] to remedy the Defect when [the Chromebooks] are presented for repair" or "to pay the expenses associated with diagnosing and repairing the defective devices." (SAC ¶¶ 130–32.) Samsung argues that Plaintiffs' MMWA claim must be dismissed on its face because "[t]o bring a claim under the MMWA as a class action, there must be 'one hundred' named plaintiffs." (Mot. at 8–9.) Plaintiffs argue that "because the MMWA expressly contemplates alternative jurisdiction in any court of competent jurisdiction and Congress intended for [CAFA] to expand federal court jurisdiction over class actions, the Court should find that CAFA provides an alternative basis of jurisdiction for MMWA claims." (Opp. at 5–6 (quoting *McGee v. Cont'l Tire N. Am., Inc.*, No. 06-6234, 2007 WL 2462624, at *4 (D.N.J. Aug. 27, 2007) (cleaned up).)

Subsequent controlling precedent forecloses Plaintiffs' position. After this motion was briefed, the Third Circuit squarely held that "CAFA does not provide a basis for federal jurisdiction over MMWA class actions that do not satisfy the MMWA's jurisdictional requirements." *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 183 (3d Cir. 2023). Because the Second Amended Complaint names fewer than 100 plaintiffs, and therefore does not satisfy the MMWA's jurisdictional prerequisites, the Court must dismiss Plaintiffs' MMWA class action claim.

**B. Breach of Implied Warranty of Merchantability**

As to the claims of breach of the implied warranty of merchantability, Samsung has two essential arguments: (a) that they are barred by the same one-year time limit that applies to the express warranty; and (b) that they fail substantively because the defect was not one that emerged at the time of purchase or shortly thereafter, rendering the goods unfit for sale. While I reject the first argument, I accept the second, and grant the motion to dismiss these claims.

6

**(a) Unconscionability and the one-year time limit**

Plaintiffs assert that Samsung breached the implied warranty of merchantability. (SAC ¶¶ 140–52.) Plaintiffs do not dispute that their Chromebooks' implied warranty of merchantability is limited to the same time period as the express warranty—one year. (*See* DE 27-3.) Neither do Plaintiffs contest that their Chromebooks allegedly failed *after* the one-year warranty period had expired. (SAC ¶¶ 19, 21, 28, 30, 37, 39, 46, 48, 54, 56, 59.) The Third Circuit and courts in this District have regularly held that it is permissible for an express warranty, as here, to limit or even displace the implied warranty of merchantability. *See, e.g., McCalley v. Samsung Elecs. Am., Inc.*, No. 07-2141, 2008 WL 878402, at *7 (D.N.J. Mar. 31, 2008) ("Plaintiff's breach of implied warranty claim fails because the duration of the implied warranty period is consistent with the express warranty period, or in other words one year."); *Taylor v. BMW of N. Am., LLC*, No. 20-1994, 2021 WL 1186777, at *13 (D.N.J. Mar. 29, 2021) ("Because the [warranty] limited the duration of any implied warranties to the duration of the express warranty, the implied warranty claims likewise must be dismissed."). If the one-year limit is found valid, then, Plaintiffs would be foreclosed from bringing a breach of implied warranty claim for any defects which manifested more than one year after the original purchase date. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995); (DE 27-3).

Plaintiffs assert, however, that Samsung's one-year limitation on the implied warranty is unconscionable. And it is true that plaintiff may avoid the durational limit of a warranty if that limit is found unconscionable. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *11 (D.N.J. May 8, 2017). To invoke that exception, Plaintiffs must plead 1) substantive unconscionability, *i.e.*, that the contract "involve[es] an exchange of obligations so one-sided as to shock the court's conscience," and 2) procedural unconscionability, *i.e.*, "an inequality of bargaining power which results in no

real negotiation and an absence of meaningful choice." *DeFrank*, 2020 WL 6269277, at *18 (citations omitted).

Plaintiffs allege that this one-year warranty limitation is substantively unconscionable because Samsung had pre-sale knowledge of the Defect, concealed it, and manipulated the warranty term to avoid paying for it.[7] (SAC ¶¶ 105–07, 133–34, 148–49.) I have previously followed the "recent trend in this District" which is "consistent with the prevailing approach elsewhere" that "knowledge of a latent defect alone does not render limitations in a warranty unconscionable." *Taylor*, 2021 WL 1186777, at *10–11 (citing *In re Caterpillar, Inc., C13 and C15 Engine Prods. Liab. Litig.*, No. 14-3722, 2015 WL 4591236, at *19–21 (D.N.J. July 29, 2015)). However, knowledge of the defect *plus* manipulation of the warranty to avoid liability is sufficient to allege substantive unconscionability and survive a motion to dismiss. *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *14 (D.N.J. Jan. 24, 2014). The Second Amended Complaint alleges that "Samsung, with knowledge of the latent defect, manipulated the warranty so as to ensure the warranty expired before the defect materialized and the consumer became aware of it." (SAC ¶ 106.) I will thus address whether Plaintiffs have plausibly alleged that Samsung had pre-sale knowledge of the purported Defect.

---

[7]     Samsung argues that the "one-year warranty is industry-standard and uniform for *all* Samsung laptop and tablet devices sold in the United States." (Mot. at 17 (emphasis in original).) In support, Samsung cites to the websites of three of its competitors. (*Id.* at 17 n.23.) Samsung, however, provides no authority that such evidence may be properly considered at the motion to dismiss stage, and it does not appear to fit into any of the exceptions to the general rule that "a district court may not consider matters extraneous to the pleadings" in deciding a motion to dismiss. *U.S. Express Lines*, 281 F.3d at 388; *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record. . . . [A] court may [also] consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

Plaintiffs point to four categories of information which they claim show pre-sale knowledge of the purported Defect: (1) pre-release production testing, (2) warranty repair inquiries, (3) online comments and posts about the Chromebooks, and (4) a Samsung affiliate's patent applications. I will address each in turn.

Plaintiffs allege that Samsung had pre-sale knowledge of the Defect from "its own pre-release product testing" including a "Hinge Cycling Test" and "MIL-STD-810H durability and environmental testing." (SAC ¶¶ 85–90.)[8] Plaintiffs allege that "since at least 2011, Samsung has advertised that it subjects its laptop computers to strenuous pre-production durability testing, including a Hinge Cycling Test that it performs thousands of times." (*Id.* ¶¶ 86–87.) Plaintiffs further claim that Samsung reportedly employs "a torsion test to ensure that the notebooks have ample resistance from twisting or bending of the body. Then there's the impact test to enhance screen durability from easy damage and the hinge cycling test to guarantee less wear from repeated opening and closing of the notebook." (*Id.* ¶ 88.) Plaintiffs also allege that Samsung "subjects its products, including the Chromebook Plus, to MIL-STD-810H testing" which "includes at least twenty-two (22) different tests for durability[.]" (*Id.* ¶ 90.) Plaintiffs, relying on all such tests, conclude that Samsung "would have learned of the Defect in the Class Devices when it conducted this pre-sale testing subjecting them to extreme conditions, opening them and closing them to simulate use." (*Id.* ¶ 91.) There is no straightforward allegation that these Chromebook models failed such tests. But this alleged testing regimen, most of which focuses on durability and some of which

---

[8]      Samsung claims that "the Chromebooks Plaintiffs bought were *not* MIL-STD-810H certified, as shown by (i) their publicly available specifications and (ii) Plaintiffs' citations to webpages for *different products*." (Mot. at 25–26 (emphasis in original).) Samsung, however, does not cite anything in support of their contention that the Chromebooks did not undergo such testing, and in any event the Court must accept Plaintiffs' allegations as true at this stage. *Morrow*, 719 F.3d at 165; (SAC ¶ 89 ("Defendant subjects its products, including the Chromebook Plus, to MIL-STD-810H testing.")).

directly targets the hinges, leads to a plausible inference that Samsung had pre-sale knowledge of the Defect, assuming there was a Defect. *See Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 227–28 (D.N.J. 2020) (finding pre-sale knowledge was plausible in part based on testing specifically targeted at the allegedly defective part).

Samsung argues that some of the sources Plaintiffs cite on this point are "third-party articles referring to testing of *different* Samsung products about *three to four years* before Plaintiffs' purchases." (Mot. at 24 (emphasis in original).) It is "rank speculation," says Samsung, to assume that the same testing was conducted on the Chromebooks and that the results showed the Defect. (*Id.*) I disagree—at this stage, it can be reasonably inferred that Samsung would have conducted testing on the Chromebooks similar to that it conducted on similar laptop products just a few years earlier, and Plaintiffs explicitly allege as much. (SAC ¶¶ 86–91.)

Concededly, the allegations of pre-release testing are no more than generally suggestive, because the specific *results* of such testing are not alleged. Plaintiffs allege a bit more, however. Samsung, they say, would have been aware of the purported Defect because, upon information and belief, Samsung received numerous "warranty repair inquiries and supplied replacement parts for the [Chromebooks] dating back to 2018." (*Id.* ¶ 92.) Additionally, Plaintiffs allege that Samsung surely "knew about the Defect because of the large number of comments and posts made online about the Defect." (*Id.* ¶ 93.) Plaintiffs excerpt a selection of these posts in their Second Amended Complaint. (*Id.* ¶¶ 93–99.) These posts show a pattern of Chromebook hinges breaking from their mount and shattering the screen. (*Id.*) Samsung responds that the online comments and posts are "picked from thousands of positive reviews on the same websites," that most of them "fail to specify the model, the purchase date, when the hinge allegedly broke, how it broke, whether it was repaired, or whether the device was beyond the warranty." Only one review bears a date (August 5, 2018). (Mot. at 26–28.) The

undated reviews thus fail to reveal whether Samsung had *pre-sale* knowledge of the purported Defect. However, analyzing the allegations in their entirety, the online posts and allegations of warranty claims add to the plausible, though hardly compelling, inference that Samsung had pre-sale knowledge. *See Almeida v. Apple, Inc.*, No. 21-07109, 2023 WL 3149252, at *1 (N.D. Cal. Mar. 1, 2023) ("[E]ven those complaints that post-date the plaintiffs' purchases support the inference—at least when combined with the pre-release testing allegations—that Apple was on notice of the defect at the time the plaintiffs purchased their laptops: if ordinary use by consumers so readily revealed the defect, surely Apple's targeted testing did too." (citation omitted)); *In re Macbook Keyboard Litig.*, No. 18-02813, 2019 WL 1765817, at *6 (N.D. Cal. Apr. 22, 2019) ("Courts have found that allegations that similarly address multiple specific sources of knowledge have raised a plausible inference of the defendant's knowledge." (citations omitted)).

Where, as here, the relevant information is in the defendant's hands, the Court will more readily open the doors of discovery.[9] Plaintiffs, from their outsider's perspective, have adequately pled substantive unconscionability based on knowledge of the defect and manipulation of the warranty terms to avoid the cost thereof. *Skeen*, 2014 WL 283628, at *14.

Plaintiffs must also plead *procedural* unconscionability. Samsung argues that "Plaintiffs nowhere allege that the Chromebook was their only option, or that they could not have bought a similar product from another company. . . .

---

[9]     Finally, Plaintiffs point to patent applications for "two-in-one laptop hinges" made by Samsung's affiliate. (SAC ¶ 100.) According to Plaintiffs, the patent applications "demonstrate that Defendant knew or should have known of the crucial importance of well-functioning hinges that are properly anchored in its two-in-one laptops, lest the hinges fail and destroy the screen and device." (*Id.*) This is weak; no one doubts that the hinge is a "crucial" component, but no inference arises therefrom that the particular hinges in the Chromebooks were defective. At best, it suggests that the manufacturer paid close attention to the quality of that component, so defects were more likely to have been discovered. I need not reach the issue, because other allegations, as expressed above, are sufficient to plausibly allege pre-sale knowledge.

Nor do they allege any coercion or that they were surprised by the one-year warranty . . . Plaintiffs also could have bought an extended warranty." (Mot. at 13–14.) However, "Courts have held that a warranty is procedurally unconscionable when the manufacturer knew of the defect and concealed it while the consumer had no means to negotiate the warranty." *Opheim v. Volkswagen Aktiengesellschaft*, No. 20-02483, 2021 WL 2621689, at *8 (D.N.J. June 25, 2021) (citations omitted). As explained above, Plaintiffs adequately allege pre-sale knowledge, and that Samsung did not disclose the purported Defect. (SAC ¶ 148.) They also allege that "there was unequal bargaining power between Defendant and Plaintiffs" because Plaintiffs "had no other options for negotiating the terms" of the warranty. (*Id.* ¶ 134.) Plaintiffs continue that they had "no meaningful choice" in determining the time limitation and that a "gross disparity in bargaining power existed between Defendant and Class members, as only Defendant knew or should have known that the Class Device would fail well before the expiration of its useful life." (SAC ¶ 149.)

Again, whether or not this is a compelling argument, it does constitute a sufficient allegation of procedural unconscionability. *Bullard v. Jaguar Land Rover Auto. PLC*, No. 20-14464, 2023 WL 4845873, at *8 (D.N.J. July 28, 2023) ("Plaintiffs have also plausibly pled that they had 'no meaningful choice in determining these time limitations' and that there was a 'gross disparity in bargaining power' . . . which is sufficient to allege procedural unconscionability."); *Timing Chain*, 2017 WL 1902160, at *11 (noting that procedural unconscionability "typically is present when a party has no meaningful choice in negotiating the term due to a gross disparity in bargaining power" (citation and internal quotation marks omitted)).

Because Plaintiffs have adequately pled that the one-year warranty limitation is unconscionable, the Defect's manifestation more than one year after their purchases does not defeat their claims at the motion to dismiss stage.

Plaintiffs also cite to New Jersey's UCC, which provides as follows:

> When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

N.J.S.A. § 12A:2-302(2); (SAC ¶ 105; Opp. at 9). This provision is not an invitation for courts to sidestep pleading requirements; the allegations of unconscionability must still be sufficiently plausible to meet federal pleading requirement. It is, however, an acknowledgement that the *ultimate determination* of unconscionability, though a matter of law for the court, is "highly fact dependent and so is not appropriate for determination on a motion to dismiss." *Skeen*, 2014 WL 283628, at *15. As explained above, I state no more than the proposition that Plaintiffs have met their *pleading* burden as to unconscionability. *See Timing Chain*, 2017 WL 1902160, at *12 (finding unconscionability plausibly pled but noting that the court "is not declaring the [warranties] unconscionable at this time"); *Bullard*, 2023 WL 4845873, at *8 n.7 ("Importantly, the Court is not currently *finding* that the warranty terms are, in fact, unconscionable. The Court merely finds that Plaintiffs have pled sufficient facts to proceed to discovery on this issue." (emphasis in original)).

### (b) Defect did not manifest shortly after purchase

Samsung further argues that the claim is untimely under the substantive law of implied warranty. The implied warranty claim fails, says Samsung, because Plaintiffs "used their Chromebooks for years without issue, thus showing that the devices were *not* 'unmerchantable.'" (Mot. at 12 n.18 (emphasis in original); Reply at 2.) The implied warranty of merchantability is a fairly basic protection ensuring that (to simplify) goods would pass as saleable in the trade and are fit for their ordinary purpose. *See, e.g.,* UCC § 2-314; *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846, 2011 WL 2976839, at *22 (D.N.J. July 21, 2011) ("The implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." (citation and

internal quotation marks omitted)). Violation of that standard is not adequately alleged here.

Even if unconscionability voids a manufacturer-imposed time limit on claims, the claims must still satisfy "the law applicable to the implied warranty of merchantability," including the usual requirement that the defect be one that manifests shortly after purchase. *Bullard*, 2023 WL 4845873, at *9 (finding that plaintiffs adequately pled that a time-and-mileage warranty limitation was unconscionable but dismissing the breach of implied warranty claim because "[n]o turbocharger is alleged to have failed 'shortly after purchase'"). "A claim for breach of implied warranty must ordinarily arise shortly after purchase." *Skeen*, 2014 WL 283628, at *16 (citing *Sheris v. Nissan N. Am. Inc.*, No. 07-2516, 2008 WL 2354908, at *6 (D.N.J. 2008)). In *Sheris*, the Court dismissed a claim for breach of the implied warranty of merchantability where "Plaintiff was able to drive his [car] for 20,618 miles and for about two years" before the alleged defect manifested. *Sheris*, 2008 WL 2354908, at *5–6. The court noted that "the weight of authority, from courts across the country" holds that a consumer may not recover for breach of the implied warranty of merchantability where they used a product, there an automobile, "without problems for years." *Id.* at *6 (citations omitted). Here, the shortest alleged period before the Defect manifested itself was approximately two years after purchase. (SAC ¶¶ 28, 30.)

No Plaintiff alleges that the Defect appeared in the Chromebook within the period "shortly after purchase," or other facts sufficient to support an inference that they were not saleable. For that reason, the implied warranty of merchantability claims are dismissed for failure to state a claim.[10]

---

[10]   Samsung further argues in the alternative that the specific implied warranty claims asserted by Plaintiffs Dutescu and Pederson (Florida) and Tomsik (Ohio) fail for lack of privity. (Mot. at 18.) Both Florida and Ohio law require privity of contract between the parties in order to state a claim for breach of the implied warranty of merchantability. *Oblak v. Integra Lifesciences Corp.*, No. 16-1832, 2017 WL 1831098, at *3 (N.D. Ohio May 4, 2017) (citing *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147–48 (Ohio 2007)); *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108,

## C. Fraud Claims

Plaintiffs' Eighth Cause of Action alleges fraudulent omission or concealment. On behalf of the subclasses of purchasers in Florida, Oklahoma, Missouri, and Ohio, Plaintiffs allege violation of those states' consumer protection statutes, claims which the parties agree sound in fraud as well.[11] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, a plaintiff must allege "all of the essential factual background that would accompany 'the first paragraph of a newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props.,*

---

1117 (S.D. Fla. 2019) (citing *Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747, 751 (Fla. Dist. Ct. App. 2006)). Dutescu, Pederson, and Tomsik all allege that they purchased their Chromebooks not from Samsung, but from Best Buy. (SAC ¶¶ 37, 46, 54.) Those claims fail for this additional reason.

Plaintiffs cite two exceptions to the privity rule, but neither applies here.

First, they argue that the privity bar does not apply under Florida law where a manufacturer "directly provides a warranty to, or otherwise has direct contact with, a buyer who purchases from a third-party." (Opp. at 14–15 (quoting *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1032 (11th Cir. 2017)).) This exception, however, requires "direct contacts between the manufacturer and the ultimate purchaser/consumer." *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs. of Am., Inc.*, 444 So. 2d 1068, 1072 n.4 (Fla. Dist. Ct. App. 1984). Plaintiffs do not allege any pre-sale direct contacts.

Second, Plaintiffs argue that "Florida and Ohio courts find privity established under the third-party beneficiary rule." (Opp. at 15.) In support, they cite *Weiss v. General Motors LLC,* 418 F. Supp. 3d 1173, 1182 (S.D. Fla. 2019), which states "a person who is not a party to a contract can enforce the terms of the contract if the provisions of the contract primarily and directly benefit the third party or a class of persons of which the third party is a member." Even assuming this rule applies, Plaintiffs do not identify any applicable contract between Samsung and Best Buy of which they are the third party beneficiaries.

[11]     The parties largely address the common law fraud and consumer protection statute claims together, while noting some differences among state laws and between the relevant statute and common law. I will endeavor to draw the necessary distinctions.

*Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)).

### (a) Claims of Express Fraud

Samsung first argues that Plaintiffs' fraud claims fail because the Second Amended Complaint "identifies no actionable statement" (Mot. at 19), *i.e.,* a "material misrepresentation of a presently existing or past fact." *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (citation omitted).

Plaintiffs point to statements that the Chromebooks had an "immersive Quad HD 2400x1600 resolution display made of durable Gorilla Glass 3," and "passed military-grade durability tests." (Opp. at 17.) But Plaintiffs do not allege that these statements were false.

Plaintiffs further allege that Samsung represented that the Chromebooks have qualities of "supreme flexibility," "durability," and "premium design," that they can "transform from notebook to tablet to sketchbook," and that they "easily fold." (*Id.*) Samsung responds that these statements are "too imprecise" to support a claim of affirmative fraud. (Mot. at 20.) "Advertising that amounts to mere puffery is not actionable because no reasonable consumer relies on puffery. The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." *Ponzio*, 447 F. Supp. 3d at 234 (citation and internal quotation marks omitted). Thus, "general claims made in the context of advertisements to the general public" which are "neither measurable nor concrete" may not be the basis for a fraud claim. *Agrabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 608 (D.N.J. 2016) (citations omitted). These general boasts of durability and quality fall into the category of puffery, and thus are not actionable.

Additionally, and in the alternative, Samsung argues that concrete allegations of reliance are lacking: "Plaintiffs do not allege particularized facts showing what *they* review or relied on, or *who* made the unspecified representations." (Mot. at 20 (emphasis in original).) I agree. The Second

16

Amended Complaint states generally that each Plaintiff "relied on the marketing and sales materials present at the Best Buy retail location [or website] and on the [Chromebook's] packaging concerning the [Chromebook's] durability and functionality." (SAC ¶¶ 20, 29, 38, 47, 55.) Plaintiffs add that "[t]he fact that Defendant advertised and warranted it as a premium and durable 2-in-1 laptop/tablet with high-end features was material to [Plaintiffs] and to other reasonable consumers." (*Id.*) But Plaintiffs do not specifically allege what these materials stated, or allege that they actually saw and relied on particular statements in making their purchasing decisions. Moreover, as to the materials allegedly present at the Best Buy retail locations or website, Plaintiffs have failed to connect such representations to Samsung in any way.

In sum, Plaintiffs have failed to state a fraud claim based on affirmative statements.[12]

### (b) Fraud by Omission/Partial Disclosure

Samsung argues that the "omission-based claims" fail because Plaintiffs do not plausibly allege pre-sale knowledge or a duty to disclose. (Mot. at 21–22.) As discussed above, Plaintiffs adequately plead pre-sale knowledge.[13] The

---

[12]     To the extent Samsung argues that the same factors support dismissal of the omission-based fraud claims, it faces a "somewhat relaxed" version of the Rule 9(b) heightened pleading standard. *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012). "This is because 'a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.'" *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-07849, 2013 WL 5574626, at *15 (D.N.J. Oct. 9, 2013) (quoting *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007)). "A plaintiff can carry his Rule 9(b) burden to plead consumer fraud by omission through allegations showing that a manufacturer knew of a defect in its product prior to the plaintiff's purchase and concealed it from consumers." *Yagudauev v. BMW of N. Am., LLC*, No. 20-897, 2020 WL 6689799, at *8 (D.N.J. Nov. 13, 2020) (citations omitted).

[13]     While a party must "state with particularity the circumstances constituting fraud or mistake[,] . . . knowledge, and other conditions of a person's mind[,] may be alleged generally." Fed. R. Civ. P. 9(b). Thus, the pleading standard is unchanged, despite knowledge here being in the context of fraud claims.

requirement, or not, of a legal duty to disclose requires additional discussion, however.

Under generally applicable principles of New Jersey law, an omission may form the basis for a fraud claim if (a) the party had a duty to disclose the information based on a special relationship, or (b) the "disclosure is necessary to make a previous statement true." *Argabright*, 201 F. Supp. 3d at 602–03 (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir 1993)).

As to theory (a), Samsung states that Plaintiffs "do not and cannot allege a fiduciary or special relationship with [Samsung] that could give rise to a duty to disclose" (Mot. at 28–29), and Plaintiffs do not offer any substantive response. Rather, Plaintiffs rely chiefly on theory (b), the misleading-partial-disclosure theory. They argue that Samsung "through its misrepresentations, gave an incomplete picture of the quality and durability" of the Chromebooks and therefore was "under a duty to correct its prior disclosures upon which Plaintiffs relied in order to make such prior disclosures true." (Opp. at 25.) But again, the statements concerning "quality" and "durability" do not rise above non-actionable puffery.

Samsung also finds lacking any plausible allegation of reliance: Plaintiffs "do not identify any specific representation of material fact that they relied on." (Mot. at 29.) As noted above, Plaintiffs do not indicate what particular representations they relied upon in making their purchases; general statements that they "relied on the marketing and sales materials present at the Best Buy [or Best Buy website] and on the [Chromebook] packaging" do not suffice. (SAC ¶¶ 20, 29, 38, 47, 55.) *A fortiori,* they have not alleged that those unspecified representations were misleadingly incomplete. For this additional reason, the partial-representation theory would fail.

For all of these reasons, Plaintiffs have not sufficiently alleged a claim based on a duty to disclose or misleadingly incomplete representations under generally applicable principles as exemplified by New Jersey law.

I next consider certain issues pertaining to the duty to disclose which are peculiar to the laws of four states: Florida, Ohio, Missouri, and Oklahoma.

Under Florida law, omission-based claims face a lower threshold. Plaintiffs assert that FDUTPA has "no requirement that plaintiffs establish a common law duty to disclose for omission claims," and I agree. (Opp. at 25.) In *DeFrank*, I noted the "surprising paucity of Florida state case law on the issue," but ultimately concluded that "FDUTPA does not have a duty to disclose requirement." *DeFrank*, 2020 WL 6269277, at *8–10. I adhere to that reasoning, and thus rule that the FDUTPA claim would not fail for lack of a sufficient allegation of a duty to disclose. As discussed above, however, there remains the failure to sufficiently allege reliance.

As to the fraud claim under Ohio law, Plaintiffs argue that "allegations of a safety hazard suffice to establish a duty to disclose." (Opp. at 25 (citing *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 871 (S.D. Ohio 2012)).) *In re Porsche*, however, does not support that position. The court there noted that allegations of safety risks gave rise to a duty to disclose under *California* law, and stated that it would not dismiss an Ohio-law claim "[a]bsent authority that would put such an omission outside the scope of the OCSPA." *Id.* Plaintiffs raise this point but do not provide sufficient authority that allegations of safety risks like those here give rise to a duty to disclose under Ohio law. Thus, Plaintiffs' argument does not save such claim.

Plaintiffs further argue that "superior knowledge" suffices under Missouri law to give rise to a duty to disclose. (Opp. at 26.) "A duty to disclose . . . arises . . . when 'one party has superior knowledge or information not within the fair and reasonable reach of the other party.'" *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. 1997) (quoting *Reeves v. Keesler*, 921 S.W.2d 16, 21 (Mo. Ct. App. 1996)). Plaintiffs adequately plead that Samsung knew of the defect, and that such knowledge was not reasonably available to Plaintiffs absent disclosure by Samsung. Thus, the Missouri claim does not fail for lack of a duty to disclose. As discussed above, however, there remains the failure to sufficiently allege reliance.

19

Citing Oklahoma law, Plaintiffs argue at a fairly general level that a duty to disclose may exist. (Opp. at 26–27.) They cite *Myklatun v. Flotek Indusries, Inc.*, 734 F.3d 1230, 1234–35 (10th Cir. 2013), which noted that under Oklahoma law, circumstances other than a fiduciary relationship "may be such as to impose a legal or equitable duty to disclose all material facts." Those other circumstances may include "the relation of the parties, the nature of the subject matter of the contract or the peculiar circumstances of each particular case," or may arise from partial disclosures. *Id.* But Plaintiffs do not indicate what "circumstances" they rely on to meet the requirements of Oklahoma law. And to the extent they rely on "partial disclosures" of "durability," "quality," or other puffery, the analysis above controls, defeating such a claim. The Oklahoma claim is thus dismissed.

**(c) Remaining arguments as to the fraud claims under particular states' laws**

Samsung further argues that the Florida, Missouri, and Oklahoma common-law fraud claims must be dismissed because Plaintiffs allege "purely economic loss." (Mot. at 32). The "economic loss" doctrine patrols the boundary between tort and contract, barring recovery in tort for purely economic injuries that are the subject of a contract or warranty. *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1224 (S.D. Fla. 2017) (citing *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399, 404 (Fla. 2013)); *Nestle Purina Petcare Co. v. Blue Buffalo Co.*, 181 F. Supp. 3d 618, 639 (E.D. Mo. 2016); *United Golf, LLC v. Westlake Chem. Corp.*, No. 05-0495, 2006 WL 2807342, at *3 (N.D. Okla. Aug. 15, 2006) (quoting *Okla. Gas & Elec. Co. v. McGraw-Edison Co.*, 834 P.2d 980, 982 (Okla. 1992)).

Plaintiffs respond that they "allege more than purely economic losses throughout the SAC." (Opp. at 29–30.) The paragraphs they cite in support of that statement, however, do not actually allege any non-economic injuries. (*See* SAC ¶¶ 196–97.) Plaintiffs fault Samsung for "fail[ing] to include the multitude of exceptions to the economic loss doctrine under Florida and Missouri law."

(Opp. at 30.) Plaintiffs, however, do not explain these exceptions or attempt to argue which of the "multitude of exceptions" applies to them.

Finally, Plaintiffs claim that dismissal on the basis of the economic loss doctrine would be premature. (Opp. at 30.) But the application of this doctrine is based on what Plaintiffs *allege* as their injuries, making it suited for analysis at the 12(b)(6) stage. Plaintiffs fail to allege any non-economic injury, making dismissal on this basis appropriate. *See, e.g.*, *Ponzio*, 447 F. Supp. 3d at 238 (dismissing fraudulent concealment claim on a motion to dismiss because "Plaintiffs allege a purely economic loss as a result of the alleged defect on the same basis that they allege Mercedes breached its warranty—that their Mercedes Mars Red paint fails to function as promised"); *Nestle Purina Petcare*, 181 F. Supp. 3d at 639 (stating that consideration of the economic loss doctrine at the 12(b)(6) stage is appropriate because it relies on what the plaintiff *alleged*). Thus, the Florida, Missouri, and Oklahoma claims fail under the economic loss doctrine.

As to the Ohio (OCSPA) fraud claim only, Samsung contends that dismissal is required for lack of an allegation that Samsung acted "in the face of prior notice." (Mot. at 33.) Ohio law provides that "a consumer 'may qualify for a class action only when a supplier acted in the face of prior notice that its conduct was deceptive or unconscionable." *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 743 (N.D. Ohio 2010)(citing O.R.C. § 1345.09(B)). "The requisite notice must be in the form of: (1) a rule adopted by the Ohio Attorney General; or (2) a judicial decision involving substantially similar conduct."[14] *Id.* Plaintiffs cite to SAC ¶¶ 206–07, which claim that the OCSPA's notice requirements have been satisfied because "Samsung's violations constitute acts and practices that

---

[14]   While state procedural rules may sometimes be preempted by the Federal Rules of Civil Procedure, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), the parties did not raise the issue. I note, however, that "every court in Ohio to address this issue has held that section 1345.09(B) is substantive in nature and therefore is not preempted by [federal] Rule 23." *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 61 (E.D.N.Y. 2017) (quoting *Leonard v. Abbott Lab'ys, Inc.*, No. 10-4676, 2012 WL 764199, at *13 (E.D.N.Y. Mar. 5, 2012)).

have been declared to be deceptive or unconscionable by rules adopted under [O]CSPA § 1345.05(b)(2)" and "due to deceptive and unconscionable acts and practices similar to those alleged herein having already been determined by courts of the State of Ohio to be in violation of both [O]CSPA §§ 1345.02 and 1345.03." Plaintiffs further claim that there are a "plethora of judgments by courts of the State of Ohio determining that deceptive and unconscionable acts and practices similar to those employed by Samsung" are unlawful. (SAC ¶ 206 n.30.) But these statements are pure legal conclusions without any support which are not entitled to the presumption of truth. Thus, the OCSPA claim is dismissed.[15]

In sum, none of the fraud or consumer protection statutory claims survive the motion. Counts Three, Four, Five, Six, and Eight are dismissed without prejudice.

### D. Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must generally allege "that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994)).

Samsung first argues that Plaintiffs' unjust enrichment claim fails because "Plaintiffs fail to allege facts showing [Samsung] did anything unjust." (Mot. at 33–34.) This passing reference is insufficient to raise the issue. *United States ex rel. Moore & Co. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 299 n.4 (3d Cir. 2016) ("[T]he defendant bears the burden of showing that the plaintiff has not stated a claim." (citation omitted)).

Samsung next argues that the claim fails because "it is duplicative of Plaintiffs' consumer fraud and warranty claims" (Mot. at 34), and, relatedly,

---

[15]   Samsung argues that "Plaintiffs' fraud-based claims also fail because their Chromebooks performed longer than warrantied." (Mot. at 30.) I have already held, however, that Plaintiffs have adequately pled that the warranty time limitation was unconscionable. Thus, this argument does not support dismissal.

that the unjust enrichment claim "is unavailable when plaintiffs allege an adequate legal remedy." (*Id.* at 35.) Exercising my discretion, I find that dismissal of an unjust enrichment claim for these reasons at this early stage of the litigation would be premature. *See Dando v. Bimbo Food Bakeries Distrib., LLC*, No. 14-2956, 2017 WL 1362022, at *4 (D.N.J. Apr. 10, 2017) ("While Plaintiff cannot recover on both his contract claim and his unjust enrichment claim, the Court will not eliminate Plaintiff's unjust enrichment claim as a potential avenue of recovery at the pleadings stage of the case."). Moreover, Fed. R. Civ. P. 8(d) permits pleading in the alternative.

Next, Samsung argues that the unjust enrichment claim should be dismissed as to Plaintiffs Dutescu (Florida), Pederson (Florida), McCoy (Oklahoma), and Tomsik (Ohio) "because they fail to allege that Plaintiffs conferred a 'direct benefit' on [Samsung]—a requirement under the laws of their home states." (Mot. at 35–36.) Plaintiffs appear to agree that such a requirement exists, but they note that each Plaintiff purchased his or her Chromebook "from a Samsung authorized dealer" which they argue, without citation, is sufficient. (Opp. at 34.) That "Samsung authorized dealer," in all cases, is alleged to be third-party retailer Best Buy. (SAC ¶¶ 19, 28, 37, 46, 54.)

Under Florida law, a direct benefit is a requirement for an unjust enrichment claim. *See Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) ("[T]o prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." (citation omitted)); *DeFrank*, 2020 WL 6269277, at *22 ("[T]he presence of an intermediary rules out an unjust enrichment claim under Florida law. . . . [P]laintiffs must re-allege their claim with a plaintiff who purchased his or her dryer directly from [defendant]."). Because Dutescu and Pederson both allege that they purchased their Chromebooks from a third-party retailer, rather than directly from Samsung, their Florida unjust enrichment claims are dismissed.

Under Ohio law, "an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment without establishing that a benefit had been conferred upon that defendant by the purchaser." *Johnson v. Microsoft Corp.*, 834 N.E. 2d 791, 799 (Ohio 2005). Thus, a claim for unjust enrichment against a manufacturer will not survive where a plaintiff purchased the product at a retailer and does not allege that he or she paid any money directly to the manufacturer. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 952–93 (N.D. Ohio 2009) (holding that plaintiffs failed to state a claim for unjust enrichment under Ohio law because they "fail[ed] to allege that they entered into any economic transaction with [defendant]," as opposed to a third-party retailer). Tomsik likewise purchased her Chromebook not from Samsung, but from Best Buy, and thus fails to state a claim for unjust enrichment under Ohio law.

As to Oklahoma law, Samsung cites *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1280 (N.D. Okla. 2006) for the proposition that that State, too, has a "direct benefit" requirement. (Mot. at 36 n.42.) But *Slover* does not go so far, and neither does the case it relies on. *See id.; Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 442 n.31 ("[T]he case cited by the *Slover* court does not stand for the proposition that an unjust enrichment claim requires conferral of a direct benefit."). In *Slover*, the court dismissed the unjust enrichment claim as to certain defendants because there were no allegations that those defendants "benefitted financially at Plaintiffs' expense." *Slover*, 443 F. Supp. 2d at 1280. That would appear to be a somewhat relaxed version of the "direct benefit" requirement imposed by the laws of other states. Here, the Second Amended Complaint alleges that Samsung "retain[ed] the revenues derived from Plaintiffs' and Class members' purchases of the Class Devices." (SAC ¶ 210.) This allegation appears to meet the minimal requirements of *Slover*, even if McCoy did not purchase his Chromebook directly from Samsung. Thus, the

motion is denied as to McCoy's unjust enrichment claim under the law of Oklahoma.

In response to these state-law-specific arguments, Plaintiffs add generally that because they have alleged fraudulent conduct, Samsung cannot "insulate themselves from liability on an unjust enrichment claim simply by asserting that retail sales by liquor [stores] cut off any relationship between the consumers and the manufacturer." (Opp. at 34 (quoting *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 200 (D.N.J. 2012)).) But the Court in *Stewart* applied only New Jersey law, and is therefore inapplicable to Samsung's arguments which are specifically grounded in the particularities of the laws of Florida, Ohio, and Oklahoma.[16]

In sum, the unjust enrichment claim is dismissed without prejudice as to Plaintiffs Dutescu (Florida), Pederson (Florida), and Tomsik (Ohio). The claim survives as to Plaintiffs McCoy (Oklahoma) and Wood (Missouri).

### E. Declaratory and Injunctive Relief

Samsung argues that Plaintiffs' cause of action for "Declaratory and Injunctive Relief" (SAC ¶¶ 223–32), should be dismissed for several reasons. The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Second Amended Complaint states "[p]ursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Samsung implement and maintain reasonable production, testing, and advertising protocols to

---

[16]    While the Court in *Stewart* relied on two Southern District of Florida cases applying Florida law to find that "[o]ther federal courts have reached similar conclusions," both such cases pre-date *Kopel* and I am bound to give precedence to "the holdings of Florida's highest court, not federal decisions from district courts located outside the Third Circuit." *DeFrank*, 2020 WL 6269277, at *22 (citing *Brown & Root Braun, Inc. v. Bogan Inc.*, 54 F. App'x 542, 547 (3d Cir. 2002)).

ensure that its laptop products do not suffer from the same or a similar defect to the Defect described herein." (SAC ¶ 232.)

Samsung argues that "Plaintiffs lack standing to seek injunctive relief because it is available only to prevent imminent, concrete future harm, not to remedy an alleged past injury." (Mot. at 38.) "When seeking injunctive relief, it is not enough to allege past injury from the defendant's actions; rather, the plaintiff 'must establish that she is likely to suffer future injury from the defendant's conduct.'" *Remtek Servs., Inc. v. Wells Fargo Bank, N.A.*, No. 19-12790, 2020 WL 241332, at *5 (D.N.J. Jan. 16, 2020) (quoting *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 292 (3d Cir. 2018)). "[A]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original) (citation and internal quotation marks omitted). An injunction in unavailable "where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The burden is on Plaintiffs to establish standing. *Id.* at 101–02.

Plaintiffs point out that they all "remain[] very much interested in purchasing Samsung's laptops in the future and would consider doing so if [they] felt confident that Samsung would correct the problems[.]" (SAC ¶¶ 26, 35, 45, 53, 63.) These vague, speculative, and conditional assertions are insufficient to establish a reasonable likelihood of future harm. *Potts v. Johnson & Johnson Consumer Inc.*, No. 20-10406, 2021 WL 2177386, at *8 (D.N.J. May 28, 2021) ("Plaintiff's alleged desire to purchase the Products in the future as a means of establishing the likelihood that they will suffer an ongoing harm, is pure speculation." (citation omitted)); *Schmitt v. Newell Brands Inc.*, No. 20-16240, 2023 WL 2662377, at *8 (D.N.J. Mar. 28, 2023) (concluding that plaintiff lacked standing to seek injunctive relief where his "request for injunctive relief amounts to a 'stop me before I buy again claim'"); *Rieger v. Volkswagen Grp. of Am., Inc.*, No. 21-10546, 2023 WL 3271116, at *6 (D.N.J. May 4, 2023) (finding that plaintiffs lacked standing to seek injunctive relief

and noting that "to find standing here would be to assume that Plaintiffs are at real and immediate risk of purchasing new class vehicles from VGA despite the lengths at which they have gone through in alleging VGA's unfair and deceptive practices"); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465 (S.D.N.Y. 2020) ("[T]he injury alleged by Plaintiffs in this case is *hypothetical—if* they choose to purchase Godiva's products in the future, *then* they *may* be harmed. The conditionality of this alleged injury removes it from the harms that Article III authorizes federal courts to remedy." (emphasis in original)). Plaintiffs have failed to establish standing to seek injunctive relief.

The argument for a declaratory judgment rests on a misnomer or mischaracterization. The only relief sought in Count Nine is "a judgment declaring that Samsung implement and maintain reasonable production, testing, and advertising protocols." (SAC ¶ 232.) That amounts to a request for a coercive injunction, not a "declar[ation of] the rights or other legal relations" of the parties. 28 U.S.C. § 2201(a). Thus, the request for declaratory relief falls with the injunctive relief request, and is dismissed as well. Because Plaintiffs lack standing at this juncture, I will not address the remaining arguments as to injunctive relief.

## IV.   CONCLUSION

To summarize, Plaintiffs' claims under the MMWA are dismissed for lack of jurisdiction. The implied warranty of merchantability claims, common law fraud claims, and consumer protection statutory claims are dismissed for failure to state a claim. The unjust enrichment claim is dismissed for failure to state a claim as to Plaintiffs Dutescu (Florida), Pederson (Florida), and Tomsik (Ohio), but survives as to Plaintiffs McCoy (Oklahoma) and Wood (Missouri). Plaintiffs' claim for declaratory and injunctive relief is dismissed for lack of standing.

Thus, for the reasons set forth above, Samsung's motion to dismiss the Second Amended Complaint is **GRANTED in part and DENIED in part**. The motion is granted as to all claims except the unjust enrichment claims of Plaintiffs McCoy and Wood. The dismissal is granted, however, without

prejudice to the submission of a proposed amended complaint within 60 days, without the necessity of a formal motion to amend. If no proposed amended complaint is filed, the dismissal shall become one with prejudice, except as to the claims dismissed for lack of subject matter jurisdiction or standing.

An appropriate order follows.

Dated: September 20, 2023

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**